1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

VENABLE LLP
Susan E. Hollander (SBN 133473)
Jessica L. Grant (SBN 178138)
Whitney L. Tolar (SBN 324112)
101 California Street, Suite 3800
San Francisco, CA  94111
Email:          sehollander@venable.com
                jgrant@venable.com
                wltolar@venable.com
Telephone:      (415) 653-3750
Facsimile:      (415) 653-3755

VENABLE LLP
Sarah S. Brooks (SBN 266292)
Sharoni S. Finkelstein (SBN 271829)
2049 Century Park East, Suite 2300
Los Angeles, CA  90067
Email:          ssbrooks@venable.com
                ssfinkelstein@venable.com
Telephone:      (310) 229-9900
Facsimile:      (310) 229-9901

*Attorneys for Plaintiff and Counter-Defendant*
*Tri-Union Seafoods, LLC*
*dba Chicken of the Sea International*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRI-UNION SEAFOODS, LLC DBA CHICKEN OF THE SEA INTERNATIONAL, a California limited liability company,<br><br>  Plaintiff and Counter-Defendant,<br><br>  vs.<br><br>OTIS MCALLISTER, INC., a California corporation; and DOES 1 THROUGH 10,<br><br>  Defendants and Counter-Claimant. | Case No.:  4:17-cv-06646-JSW<br><br>Hon. Jeffrey S. White<br><br>**TRI-UNION SEAFOODS, LLC DBA CHICKEN OF THE SEA INTERNATIONAL'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**<br><br>Date:          October 25, 2019<br>Time:          9:00 A.M.<br>Courtroom:      5 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT, on October 25, 2019, at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Jeffrey S. White, United States District Court Judge, Northern District of California, located at 1301 Clay Street, Oakland, California 94612, Courtroom 5, 2nd Floor, Plaintiff Tri-Union Seafoods, LLC dba Chicken of the Sea International ("Plaintiff" or "Chicken of the Sea") will and hereby does move pursuant to Federal Rule of Civil Procedure 56 for summary judgment with respect to all claims asserted against it by Defendant Otis McAllister, Inc. ("Otis") in its Counterclaim filed on May 5, 2019, Dkt. 63.

This motion is based on this notice of motion and motion, the following memorandum of points and authorities, the Declaration of Whitney L. Tolar, the Declaration of Valentin Ramirez, the pleadings on file in this matter, the reply the Plaintiff intends to file, any material of which this Court takes judicial notice, and any further argument the Court might allow.

Dated: August 29, 2019

**VENABLE LLP**

By: _Susan Hollander_

Susan E. Hollander
*Attorneys for Plaintiff*
*Tri-Union Seafoods, LLC dba*
*Chicken of the Sea International*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

FACTUAL BACKGROUND .................................................................................2

ARGUMENT .........................................................................................................5

I.      SUMMARY JUDGMENT STANDARD ......................................................5

II.     LACHES BARS OTIS' COUNTERCLAIMS ..............................................6

       A.     Otis' Delay Was Unreasonable............................................................7

            1.     Otis Delayed Filing Suit for Over 15 Years...............................7

            2.     Laches Presumptively Bars Otis' Claims Because It Filed Suit Outside the Statute of Limitations for Any Analogous State-Law Claim..............................................................................................9

            3.     The *E-Systems* Factors Compel a Finding that Otis' Delay Was Unreasonable............................................................................10

       B.     Otis' Delay Will Severely Prejudice Chicken of the Sea ...................12

III.    OTIS ACQUIESCED TO CHICKEN OF THE SEA'S USE OF ITS FAMOUS MERMAID LOGO ..................................................................................14

CONCLUSION.....................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*American Int'l Group, Inc. v. American Int'l Bank*,
  926 F. 2d 829 (9th Cir. 1991) ...................................................................................5

*Cel-Tech v. Los Angeles Cellular Tel*,
  20 Cal. 4th 163 (1999) ...........................................................................................6

*Chabner v. United of Omaha Life Ins. Co.*,
  225 F.3d 1042 (9th Cir. 2000) ................................................................................6

*Chattanoga Mfg., Inc. v. Nike, Inc.*,
  301 F.3d 789 (7th Cir. 2002) ..................................................................................13

*Conopco, Inc. v. Campbell Soup Co.*,
  95 F.3d 187 (2d Cir. 1996) ......................................................................................14

*Danjaq LLC v. Sony Corp.*,
  263 F.3d 942 (9th Cir. 2001) .........................................................................6, 9, 12

*Dwinell-Wright Co. v. White House Milk Co.*,
  132 F.2d 822 (2d Cir. 1943).....................................................................................15

*E-Systems, Inc. v. Monitek, Inc.*,
  720 F.2d 604 (9th Cir. 1983) ...................................................................10, 11, 12

*Eat Right Foods Ltd. v. Whole Foods Market, Inc.*,
  2019 WL 3408896, No. 18-35473 (9th Cir. July 29, 2019).....................................8

*Fitbug Ltd. v. Fitbit, Inc.*,
  78 F. Supp. 3d 1180 (N.D. Cal. 2015) ..............................................................6, 8

*Grupo Gigante SA de CV v. Dallo & Co., Inc.*,
  391 F.3d 1088 (9th Cir. 2001) ...........................................................................5, 13

*Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*,
  559 F.3d 985 (9th Cir. 2009) ...........................................................................8, 12, 13

*Jackson v. Bank of Hawaii*,
  902 F.2d 1385 (9th Cir. 1995) .................................................................................5

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
  304 F.3d 829 (9th Cir. 2002) ...........................................................................5, 6, 7, 9

*Krantz v. BT Visual Images*,
  89 Cal. App. 4th 164 (2001) ...................................................................................6

*Miller v. Glenn Miller Prods.,*
    318 F. Supp. 2d 923 (C.D. Cal. 2004) ....................................................................9

*Miller v. Glenn Miller Prods.,*
    454 F.3d 975 (9th Cir. 2006) ..................................................................6, 7, 9, 10

*Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.,*
    894 F.3d 1015 (9th Cir. 2018) .....................................................................6, 8, 9

*Saul Zaentz Co. v. Wozniak Travel, Inc.,*
    627 F. Supp. 2d 1096 (N.D. Cal. 2008) ..............................................................6, 12

*Seller Agency Council, Inc. v. Kennedy Center for Real Estate Educ., Inc.,*
    621 F.3d 981 (9th Cir. 2010) ............................................................................7, 14

*Tillamook Country Smoker, Inc. v. Tillamook Cty. Creamery Ass'n,*
    465 F.3d 1102 (9th Cir. 2006) ...................................................................... *passim*

## Statutes

15 U.S.C. § 1072................................................................................................8

Cal. Bus. & Prof. Code § 17208 ...........................................................................9

Fed. R. Civ. P. 56(e) ..........................................................................................5

## Other Authorities

McCarthy on Trademarks and Unfair Competition; 6 McCarthy § 31:41........................................5

## SUMMARY OF ARGUMENT

On May 10, 2019, Defendant and Counterclaimant Otis McAllister ("Otis") filed its counterclaims, Dkt. 63 ("Countercl."), to enjoin all use of Chicken of the Sea's "updated" mermaid logo on all canned seafood. All of Otis' counterclaims are barred as a matter of law by the doctrines of laches and acquiescence.

Summary judgment should be granted because laches bars Otis' Lanham Act and state law claims. Fitbug Ltd. v. Fitbit, Inc., 78 F. Supp. 3d 1180 (N.D. Cal. 2015). Otis' trademark infringement and related claims are barred by laches because its delay of over 15 years in bringing its counterclaims was unreasonable and will prejudice Chicken of the Sea. See Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd., 894 F.3d 1015 (9th Cir. 2018).

When a trademark infringement claim is filed after the analogous statute of limitations period has expired, the delay is presumed unreasonable. All of Otis' counterclaims are subject to a four-year limitations period, based on analogous California statutes of limitations. See Pinkette, 894 F.3d at 1025; see Cal. Bus. & Prof. Code § 17208. Otis had actual and/or constructive knowledge of Chicken of the Sea's "updated" mermaid logo since at least 2004, when Chicken of the Sea's federal trademark registration for the "updated" mermaid logo was granted. See 15 U.S.C. sec. 1072. Otis therefore delayed in bringing its counterclaims for eleven years after the analogous limitations period had expired. Since 2003, Chicken of the Sea has sold millions of units of seafood products bearing the "updated" mermaid logo, and has spent millions of dollars in advertising and promoting products bearing its "updated" mermaid logo. Chicken of the Sea will suffer severe prejudice due to Otis' delay if Otis is permitted to recover on its counterclaims. See Saul Zaentz Co. v. Wozniak Travel, Inc., 627 F. Supp. 2d 1096, 1117-18 (N.D. Cal. 2008).

Acquiescence limits Otis' right to bring suit following its implied consent to Chicken of the Sea's use of its "updated" mermaid logo. Otis conveyed its implied consent by maintaining a "business relationship" with Chicken of the Sea from at least 2008 to 2018. Seller Agency Council, Inc. v. Kennedy Center for Real Estate Educ., Inc., 621 F.3d 981, 989 (9th Cir. 2010).

**INTRODUCTION**

Plaintiff and Counter-Defendant ("Chicken of the Sea") brought trademark infringement and related claims against Otis McAllister ("Otis") on November 17, 2017, Dkt. 1 ("Compl.") after Otis began using a mermaid design on its La Sirena brand canned tuna, which Chicken of the Sea has alleged infringes its famous mermaid logo and federal trademark registrations. *See generally*, Compl.

In May 2019, in a thinly-veiled attempt to gain leverage in the litigation initiated by Chicken of the Sea, Otis filed counterclaims for federal unfair competition and false designation of origin, common law trademark infringement, California unfair competition, and common law unfair competition. *See generally*, Otis McAllister's Counterclaim ("Countercl."). The gist of these claims is that Chicken of the Sea's updated 2003 mermaid logo is confusingly similar to the mermaid logo Otis has allegedly used on its canned sardines since 1918. *Id.* at ¶ 10.

Otis' counterclaims turn on what it calls "the current COSI Mermaid." *Id.* at ¶ 22. Although that mermaid is merely an updated version of the famous mermaid logo that has been featured on Chicken of the Sea labels and advertisements for over half a century, it is undisputed that Chicken of the Sea's "updated" mermaid logo was first used on its line of seafood products in 2003. Tolar Decl. ¶¶ 3-4; Ramirez Decl. ¶ 5. Chicken of the Sea filed trademark applications for its "updated" mermaid logo in 2003, which Otis did not oppose, and which set forth a date of first use of May 5, 2003. Tolar Decl. ¶¶ 3-4, 11. Chicken of the Sea obtained federal trademark registrations for its "updated" mermaid logo in 2004. *Id.* at ¶¶ 3-4, Exs. B, C.

Chicken of the Sea has used its "updated" mermaid logo on a wide variety of seafood products sold at retail and "big box" stores throughout the United States and in its advertising *for over 15 years* with no demand from Otis that it cease its use of the "updated" mermaid logo until May 2019—a year and a half into defending itself against the trademark infringement suit brought by Chicken of the Sea. *See* Ramirez Decl. ¶¶ 5, 13. Further, by Otis' own admission, it had a "business relationship" with Chicken of the Sea from 2008 to 2018, whereby Otis purchased sardines from Chicken of the Sea's parent company. Countercl. ¶ 14. Otis has inexcusably delayed in enforcing its alleged trademark rights in its La Sirena mermaid logo.

1

If Otis is permitted to pursue its counterclaims and obtain injunctive relief and damages, Chicken of the Sea will suffer extreme and irreparable prejudice.  As a matter of law, Otis' counterclaims against Chicken of the Sea are barred by the doctrines of laches and acquiescence. This Court should grant Chicken of the Sea's motion and enter summary judgment in its favor.

**FACTUAL BACKGROUND**

For 65 years, Chicken of the Sea has used a now-iconic golden-locked mermaid logo to identify its canned tuna products.  Ramirez Decl. ¶¶ 3-4.  During that time, the mermaid logo has become synonymous with Chicken of the Sea.  *Id.* at ¶ 3.  As one of only three major canned tuna brands in the United States, Chicken of the Sea's distinctive mermaid logo shares the tuna market with StarKist's Charlie the Tuna and Bumble Bee's bee mascot.  *Id.*  The golden-locked mermaid has been the face of Chicken of the Sea since 1952, and the company has spent millions of dollars in advertising and promoting products bearing the mermaid logo in a wide variety of media, including in stores, print, radio, television, social media, and Internet since that time.  *Id.* at ¶ 4.  Since the mermaid logo was introduced, Chicken of the Sea has sold millions of units of a wide variety of seafood products featuring the trademarked mermaid logo to retail outlets nationwide, including grocery store chains, "big box" retail locations, independent markets, food services, and more.  *Id.*

Chicken of the Sea has used various forms of the mermaid logo since its inception.  *Id.* Although the mermaid logo has updated her look over time, certain elements have remained constant:  she is depicted in a sideways position, with long, flowing blonde hair, slender arms, and a dark colored tail.  *Id.*  On September 2, 1958, Chicken of the Sea obtained a federal trademark registration for its mermaid logo for "canned tuna fish."  Tolar Decl. ¶ 2, Ex. A.  In the early 2000s, Chicken of the Sea updated its famous mermaid logo to give its classic mermaid a newer, more modern look (the "updated" mermaid logo).  Ramirez Decl. ¶ 5, Ex. A.  Chicken of the Sea announced the "updated" mermaid logo in a July 2002 flyer titled "Meet our New Mermaid!," which proclaimed, "The Chicken of the Sea Mermaid is one of the best-known icons in the world.  Now she has a great new look!"  *Id.*  Chicken of the Sea filed trademark applications for its "updated" mermaid logo on June 3, 2003, and obtained federal trademark

2

registrations for its "updated" mermaid logo for "canned seafood" on May 18, 2004, and July 27, 2004, with its Date of First Use claimed as May 5, 2003.  Tolar Decl. ¶¶ 3-4, Exs. B, C.  Chicken of the Sea has obtained five other federal trademark registrations featuring its "updated" mermaid logo since 2004.  Tolar Decl. ¶¶ 5-7, 9-10.  None have been opposed by Otis.  *Id.* at ¶ 11, Ex. J.

Since Chicken of the Sea's first use of its "updated" mermaid logo in 2003, Chicken of the Sea has sold millions of units of seafood products with the "updated" mermaid logo featured on the labels, including salmon, tuna, clams, crabs, mackerel, oysters, sardines, and shrimp.  Ramirez Decl. at ¶ 5, Ex. B.  Chicken of the Sea's "updated" mermaid logo has also appeared in countless advertisements and promotional materials for Chicken of the Sea, including as the face of Chicken of the Sea's "Mermaid Club" membership rewards program, which has nearly 90,000 members.  *Id.* at ¶¶ 5-6.

The "updated" mermaid logo has been the subject of significant marketing and promotional efforts since she was introduced in 2003.  *Id.* at ¶¶ 6-12.  In 2011, Chicken of the Sea launched an integrated marketing campaign where Chicken of the Sea's "updated" mermaid was featured in a series of online video and radio commercials that brought the "updated" mermaid logo to life as an animated character.  *Id.* at ¶¶ 7-9.  In 2012, Clint Black recorded a version of the famous Chicken of the Sea Jingle, originally introduced in the early 1960s, highlighting the mermaid.  *Id.* at ¶ 11.  Chicken of the Sea owns a federal trademark registration for its famous "Ask Any Mermaid" Jingle.  Tolar Decl. ¶ 8, Ex. G.  In 2014, the Chicken of the Sea mermaid toured 56 cities across the country, and Chicken of the Sea held a nationwide contest to name its mermaid, in which nearly 50,000 entries were received.  Ramirez Decl. at ¶ 10.  Numerous articles have celebrated the Chicken of the Sea mermaid logo as "famous" and "iconic," and one of the "hottest" brand mascots of all time.  *Id.* at ¶ 12.

Otis and Chicken of the Sea have had a "business relationship," by Otis' own admission, since at least 2008, when Otis began purchasing sardines from Chicken of the Sea's parent company.  Countercl. ¶ 14.  Otis alleges that it purchased "approximately $900,000 to

$7.7 million per year of seafood from COSI's parent company, Thai-Union, from 2008 through 2018," and "the total purchases during those years were more than $39 million." *Id.*

Chicken of the Sea has used a mermaid logo on its seafood products since 1952. Ramirez Decl. ¶ 4. Over all those years, Otis has never sent Chicken of the Sea a letter demanding that it cease use of its mermaid logo, nor has Otis ever opposed any of Chicken of the Sea's trademark applications for a mermaid logo. *Id.* at ¶ 13; Tolar Decl. ¶ 11. Importantly, when Chicken of the Sea filed federal trademark applications in 2003 for its current, "updated" mermaid logo, which is the center of this dispute, Otis did not oppose Chicken of the Sea's trademark applications. Tolar Decl. ¶¶ 3-4, 11. By contrast, Otis does not own any federal trademark registrations for a mermaid design or word mark incorporating a mermaid design for seafood or similar goods. *Id.* at ¶ 12, Ex. K.[1]

On November 17, 2017, Chicken of the Sea filed its Complaint against Otis in this action. *Id.* at ¶ 14. At the time Otis filed its Answer to Chicken of the Sea's Complaint on February 20, 2018, Otis did not file any counterclaims against Chicken of the Sea. *Id.* at ¶ 15. On November 2, 2018, Otis and Chicken of the Sea attended a settlement conference before Hon. Laurel Beeler. *Id.* at ¶ 16; Dkt. 47. On December 11, 2018, Otis McAllister filed its Motion for Substitution of Attorney with the Court, substituting its former counsel, Duane Morris, with its present counsel of record, Bowles and Verna. *Id.* at ¶ 17. On April 12, 2019, Otis submitted its motion for leave to file its First Amended Answer and Counterclaims. *Id.* Otis did not file its First Amended Answer and Counterclaims against Chicken of the Sea until May 10, 2019. *Id.* Thus, Otis did not bring its counterclaims against Chicken of the Sea until one-and-one-half years after the parties had already been litigating the trademark infringement suit brought by Chicken of the Sea against Otis. *Id.* at ¶¶ 14-17.

The relief sought by Otis in its counterclaims would bar Chicken of the Sea from using the "updated" mermaid logo in the advertising and selling of canned seafood in the United

---

[1] Otis filed U.S. App. No. 86/708,323 for "frozen seafood" in July 2015 on an intent-to-use basis, which, for the first time, included a mermaid design. Tolar Decl. ¶ 14, Ex. M. Chicken of the Sea has opposed the application. *Id.* That proceeding is stayed pending this litigation.

4

1   States, force Chicken of the Sea to destroy all products and advertising materials bearing its

2   "updated" mermaid logo, and pay Otis damages in amount to be determined at trial.  Countercl.

3   at 16.  When Chicken of the Sea updated its famous mermaid logo in 2003, Chicken of the Sea

4   held a good-faith belief that it was entitled to use the "updated" mermaid logo, and the mermaid

5   logo has become one of Chicken of the Sea's most valuable assets.  *Ramirez Decl.* at ¶¶ 14-15.

6   If Chicken of the Sea were forced to stop using the "updated" mermaid logo it has used since

7   2003 on its nationwide line of canned seafood products, Chicken of the Sea would suffer

8   considerable and significant harm in the marketplace.  *Id.* at ¶ 15.

9                                   **ARGUMENT**

10  **I.    SUMMARY JUDGMENT STANDARD**

11          Summary judgment is proper, including in trademark infringement and unfair competition

12  cases, where there is no genuine issue as to any material fact.  *See, e.g.*, *Tillamook Country Smoker,*

13  *Inc. v. Tillamook Cty. Creamery Ass'n*, 465 F.3d 1102, 1113 (9th Cir. 2006) (affirming summary

14  judgment for defendant); *Grupo Gigante SA de CV v. Dallo & Co., Inc.*, 391 F.3d 1088 (9th Cir.

15  2001) (affirming summary judgment for defendant).

16          "A mere disagreement about a material issue of fact is not in itself sufficient to preclude

17  an award of summary judgment….  If the [non-moving party] cannot elicit material evidence

18  through further discovery, summary judgment is appropriate."  *Jackson v. Bank of Hawaii*,

19  902 F.2d 1385, 1389 (9th Cir. 1995) (citations omitted).  When the moving party meets its burden,

20  the "adverse party may not rest upon the mere allegations or denials of the adverse party's

21  pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule,

22  must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

23          The Ninth Circuit has confirmed that a "district court may properly grant summary

24  judgment on the basis of laches."  *American Int'l Group, Inc. v. American Int'l Bank*, 926 F. 2d

25  829, 831 (9th Cir. 1991) (citation omitted); *see also Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,

26  304 F.3d 829 (9th Cir. 2002) (affirming laches-based summary judgment for defendant).

27

28

                                        5

1   **II.   LACHES BARS OTIS' COUNTERCLAIMS**

2   Laches is "an equitable time limitation on a party's right to bring suit…resting on the

3   maxim that one who seeks the help of a court of equity must not sleep on his rights." *Jarrow*

4   *Formulas*, 304 F.3d at 835 (citations and quotations omitted).  The Ninth Circuit has made clear

5   that laches completely bars not only claims for past damages, but also claims for injunctive

6   relief. *Id.* at 835, 840.  Laches bars not only Otis' Lanham Act claims, but also its state law

7   claims.  *Id.*; *Saul Zaentz Co. v. Wozniak Travel, Inc.*, 627 F. Supp. 2d 1096, 1109 (N.D. Cal.

8   2008) (granting summary judgment on laches for all Lanham Act claims and California state law

9   causes of action); *Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1186 (N.D. Cal. 2015)

10  ("Laches is a defense to both Lanham Act claims (including trademark infringement and unfair

11  competition) as well as to California state law claims.").  Otis' claims for unfair competition in

12  violation of common law and California's Unfair Competition Law ("UCL") are also barred

13  because they are based on the same purported federal and common law trademark infringement.

14  *See* Countercl. ¶¶ 59-60; 63-64; *Krantz v. BT Visual Images*, 89 Cal. App. 4th 164, 178 (2001)

15  (UCL may not be used to avoid dispositive defenses to other predicate causes of action).

16  Time-based defenses that bar other causes of action similarly bar UCL claims based on the same

17  conduct because a court may not allow a plaintiff to "plead around an absolute bar to relief

18  simply by recasting the claim as one for unfair competition."  *Chabner v. United of Omaha Life*

19  *Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000); *Cel-Tech v. Los Angeles Cellular Tel*, 20 Cal. 4th

20  163 (1999).

21  The Ninth Circuit has repeatedly affirmed district court orders granting summary

22  judgment on laches for defendants in Lanham Act cases.  *See, e.g.*, *Pinkette Clothing, Inc. v.*

23  *Cosmetic Warriors Ltd.*, 894 F.3d 1015 (9th Cir. 2018); *Jarrow Formulas*, 304 F.3d at 840;

24  *Miller v. Glenn Miller Prods.*, 454 F.3d 975 at 997 (9th Cir. 2006); *Tillamook*, 465 F.3d at 1108-

25  09.

26  To dismiss a claim for laches, a defendant must show (1) "an unreasonable delay by the

27  plaintiff" and (2) "prejudice to itself."  *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 951 (9th Cir.

28

6

1   2001) (citation and quotation omitted); *see also Seller Agency Council, Inc. v. Kennedy Center*

2   *for Real Estate Educ., Inc.*, 621 F.3d 981, 989 (9th Cir. 2010).

3   **A.   Otis' Delay Was Unreasonable.**

4   "A determination of whether a party exercised unreasonable delay in filing suit consists

5   of two steps." *Jarrow Formulas*, 304 F.3d at 838. "First, [a court] assess[es] the length of delay,

6   which is measured from the time the plaintiff knew or should have known about its potential

7   cause of action." *Id.* Second, once a court determines the length of the delay, the court must

8   "decide whether the plaintiff's delay was unreasonable." *Id.* (citations and internal quotation

9   marks omitted).

10   1.   Otis Delayed Filing Suit for Over 15 Years.

11   In assessing the length of a party's delay, courts apply an objective, "knew or should

12   have known," standard in which laches arises from either actual or constructive knowledge.

13   *Miller*, 454 F.3d at 980-81. Here, Otis had both actual and constructive knowledge of Chicken

14   of the Sea's "updated" mermaid logo.

15   There can be no genuine dispute that Otis has had actual notice of Chicken of the Sea's

16   "updated" mermaid logo, as Chicken of the Sea has sold its line of seafood bearing the "updated"

17   mermaid logo nationwide since 2003. Ramirez Decl. ¶ 5. Since its first use of the "updated"

18   mermaid logo, Chicken of the Sea has openly and notoriously made use of its "updated"

19   mermaid logo throughout the United States, through the sale of its wide line of seafood products

20   at grocery store chains, "big box" retail locations, independent markets, food services, and more.

21   *Id.* at ¶¶ 4-5. In addition to Chicken of the Sea's nationwide sales of millions of units of seafood

22   products bearing the "updated" mermaid logo, the "updated" mermaid logo has been the subject

23   of significant publicity and promotional efforts since 2003. *Id.* at ¶¶ 5-12. Indeed, numerous

24   articles have recognized the Chicken of the Sea mermaid logo as "famous" and "iconic," with at

25   least one publication estimating that the "updated" mermaid logo has an 83% recognition rate.

26   *Id.* at ¶ 12. It is therefore inconceivable that Otis did not have actual knowledge of Chicken of

27   the Sea's "updated" mermaid logo starting in 2003, or soon thereafter.

28

7

Federal registration of a trademark, as a matter of law, constitutes constructive notice of the registrant's claim of ownership of the mark.  15 U.S.C. § 1072 ("registration of a mark on the principal register…shall be constructive notice of the registrant's claim of ownership thereof").  As a matter of law, Otis also had constructive knowledge of Chicken of the Sea's "updated" mermaid logo since at least 2004, when Chicken of the Sea's federal trademark registrations for the "updated" mermaid logo were granted.[2]  Tolar Decl. ¶¶ 3-4; *see Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, 894 F.3d 1015 (9th Cir. 2018) ("Pinkette's trademark registration put CWL on constructive notice of Pinkette's claim to ownership of" the mark at issue); 15 U.S.C. § 1072.  In *Pinkette*, the Ninth Circuit affirmed summary judgment for the defendant where the plaintiff delayed bringing its trademark infringement claims for **five years**.  *Id.* at 1030.  In the present case, Otis, without excuse, waited until mid-litigation in May 2019—over 15 years since Chicken of the Sea's first use of its "updated" mermaid logo and over 60 years after its use of any mermaid logo—to file its counterclaims.  Otis waived its right to bring its belated trademark infringement action after gaining actual and constructive knowledge of Chicken of the Sea's "updated" mermaid logo over 15 years ago, at the very least.

In sum, Otis knew or should have known of Chicken of the Sea's "updated" mermaid logo by 2003.  *See Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 990-91 (9th Cir. 2009) (laches period begins when a "prudent business person should recognize" its "potential causes of action").  The Northern District of California and the Ninth Circuit have repeatedly, and recently, confirmed that laches-based summary judgment on trademark infringement claims should be granted *for far less delay than Otis' 15-year delay*.  *See Fitbit*, 78 F. Supp. 3d at 1197 (granting summary judgment for defendant after plaintiff delayed in bringing its claims for **four-and-one-half years**); *see Pinkette*, 894 F.3d at 1030 (affirming summary judgment for defendant after plaintiff delayed in bringing its claims for **five years**); *see Eat Right Foods Ltd. v. Whole Foods Market, Inc.*, 2019 WL 3408896, No. 18-35473 at *2 (9th Cir. July

---

[2] Indeed, the undisputed evidence shows that Otis has had constructive knowledge of Chicken of the Sea's use of its famous mermaid logo since at least 1958, when Chicken of the Sea first obtained a federal trademark registration for its mermaid.  *See* Tolar Decl. ¶ 2.

1    29, 2019) (affirming summary judgment for defendant after plaintiff delayed in bringing its

2    claims for **nearly four years**).  Since summary judgment has been granted and affirmed by the

3    Ninth Circuit for a delay of four to five years, clearly a delay of over 15 years is unreasonable as

4    a matter of law.

5                2.    Laches Presumptively Bars Otis' Claims Because It Filed Suit Outside the

6                      Statute of Limitations for Any Analogous State-Law Claim

7           The reasonableness prong of laches is analyzed in light of the analogous statute of

8    limitations period; when a trademark infringement claim is filed after the analogous limitations

9    period has expired, the delay is presumed unreasonable.  *See*, *e.g.*, *Jarrow*, 304 F.3d at 837;

10   *Miller v. Glenn Miller Prods.*, 318 F. Supp. 2d 923, 941-42 (C.D. Cal. 2004) ("[I]f any part of

11   the alleged wrongful conduct occurred outside of the limitations period, courts presume that the

12   plaintiff's claims are barred by laches.") (citation omitted).  All of Otis' counterclaims are

13   subject to a **four-year** limitations period, based on analogous California statutes of limitations.

14   *See Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, 894 F.3d 1015, 1025 (9th Cir. 2018) ("the

15   most analogous state statute of limitations" in a Lanham Act trademark infringement case was

16   "California's four-year statute of limitations for trademark infringement actions"); *see* Cal. Bus.

17   & Prof. Code § 17208 ("any action to enforce any cause of action pursuant to [California's

18   Unfair Competition statute] shall be commenced within four years after the cause of action

19   accrued.").

20          Here, the limitations period began running from the time Otis "knew or should have

21   known" about its claims.  *See*, *e.g.*, *Tillamook*, 465 F.3d at 1108; *Danjaq*, 263 F.3d at 952;

22   *Miller*, 454 F.3d at 980-81 (9th Cir. 2006).  As established above, Otis knew or should have

23   known about its claims no later than 2003, when Chicken of the Sea began its open, notorious,

24   and widespread use of the "updated" mermaid label on its line of seafood products sold

25   throughout the United States and filed its trademark applications for the "updated" mermaid

26   logo.  Chicken of the Sea is not required to prove the date Otis actually learned of the "updated"

27   mermaid logo and the alleged infringement – rather, Otis' constructive notice is sufficient to

28   establish the running of the applicable limitations period.  *See Miller*, 454 F.3d at 980 (holding

                                                    9

that "laches barred a trademark infringement action even though the plaintiff did not acquire actual knowledge of the defendant's activities until the year of suit, where the 'plaintiff ought to have discovered defendant's use sooner had it been diligently seeking to enforce its mark'") (citing *E-Systems, Inc. v. Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir. 1983)).

Otis also had constructive notice of Chicken of the Sea's "updated" mermaid logo at least from the time of the mark's federal trademark registration in 2004—15 years before bringing its counterclaims.[3]  Because Otis waited eleven years after the analogous statute of limitations period had run to bring its counterclaims, laches presumptively bars Otis' counterclaims and there is no genuine issue of material fact as to the unreasonableness of Otis' delay.

3.    The *E-Systems* Factors Compel a Finding that Otis' Delay Was Unreasonable.

In addition to considering the analogous limitations period, the Ninth Circuit has directed courts to consider also the following factors in determining whether plaintiff's delay was unreasonable and its claims therefore barred:  "(1) strength and value of the trademark rights asserted; (2) plaintiff's diligence in enforcing [its] mark; (3) harm to senior user if relief is denied; (4) good faith ignorance by junior user; (5) competition between senior and junior users; and (6) extent of harm suffered by the junior user because of senior user's delay." *Tillamook*, 465 F.3d at 1108 (quoting *E-Systems*, 720 F.2d at 607).  Courts have discretion to weigh these factors in light of the facts and to balance the interests and equities of the parties. *Tillamook*, 465 F.3d at 1110-11.

Otis' lack of diligence (*E-Systems'* first factor) is discussed in Sections A.1 and A.2 above, and harm to Chicken of the Sea (*E-Systems'* sixth factor) is discussed below in Section B. Otis' lack of diligence is further evidenced by the undisputed fact that Otis has never sent a demand letter to Chicken of the Sea that it cease using its mermaid logo, nor has Otis ever opposed a trademark filing for a Chicken of the Sea mermaid logo.  Ramirez Decl. ¶ 13; Tolar

---

[3] The date of first use of the "updated" mermaid logo, as set forth in its federal trademark registrations, is May 5, 2003.  Tolar Decl. ¶¶ 3-4, Exs. B, C.

1   Decl. ¶ 11, Ex. J.  As shown below, the remaining *E-Systems* factors all indicate that Otis' delay

2   was unreasonable.

3       First, Otis does not own a single federal trademark registration for a mermaid design.

4   Tolar Decl. ¶ 12, Ex. K.  By contrast, Chicken of the Sea currently owns seven valid and existing

5   federal trademark registrations featuring its "updated" mermaid logo, and a federal trademark

6   registration highlighting the Chicken of the Sea mermaid in the famous "Ask Any Mermaid"

7   Jingle.  *Id.* at ¶¶ 3-10.  Further, Chicken of the Sea has sold millions of units of seafood products

8   branded with the "updated" mermaid logo throughout the United States.  Ramirez Decl. ¶ 5.

9   These sales have been buttressed by significant and far-reaching advertising and promotional

10  efforts highlighting the "updated" mermaid logo.  *See E-Systems*, 720 F.2d at 607 (finding it

11  inequitable to force abandonment of an "unquestionably" valuable mark).

12      Additionally, the undisputed evidence shows that sardines were the ***only*** seafood product

13  Otis consistently sold in the United States until 2006.  Tolar Decl. ¶ 18, Ex. M.  Chicken of the

14  Sea, by comparison, has sold a wide variety of canned seafood products under its famous

15  mermaid logo for decades, and has continued to sell a wide variety of seafood products under the

16  "updated" Chicken of the Sea mermaid since 2003.  Ramirez Decl. ¶¶ 4-5.

17      Second, Chicken of the Sea developed and began use of its "updated" mermaid logo in

18  2003 with no reason to believe that Otis had any objection to Chicken of the Sea's use of a

19  mermaid on canned seafood products.  Otis had an opportunity for nearly 50 years prior to the

20  introduction of Chicken of the Sea's "updated" mermaid to object to Chicken of the Sea's use of

21  a mermaid logo on its canned seafood products, yet never made any demand that Chicken of the

22  Sea cease use of its mermaid logo.  *Id.* at ¶ 13.  Thus, at the time Chicken of the Sea updated its

23  famous mermaid logo in 2003, Chicken of the Sea held a good-faith belief that it was entitled to

24  use the "updated" mermaid logo.  *Id.* at ¶ 14.

25      Third, although Chicken of the Sea does not concede that Otis is the "senior user," for

26  purposes of the *E-Systems* factors, the harm to the "senior user" if relief is denied is minimal, if

27  non-existent in this case.  By Otis' own admission, years after Chicken of the Sea introduced the

28  allegedly infringing "updated" mermaid as the face of Chicken of the Sea products, Otis and

11

1   Chicken of the Sea "peacefully coexisted and even had a business relationship."  Countercl. ¶ 14.

2   Otis never once demanded that Chicken of the Sea cease its use of its "updated" mermaid logo

3   on its seafood products.  Ramirez Decl. ¶ 13.  Further, there can be no real question that Otis will

4   suffer minimal, if any, harm if the Court denies its requested relief; the current status quo has

5   been in play for over 15 years.

6          Finally, although the parties compete, courts have found that the laches defense applies

7   despite competition between the parties.  *E-Systems*, 720 F. 2d at 607.  If anything, the existence

8   of competition supports a finding that Otis' delay was unreasonable, because competition should

9   make it easier for a plaintiff to identify any *legitimate* claims and should make it urgent to

10  address them.

11     **B.**     **Otis' Delay Will Severely Prejudice Chicken of the Sea**

12         Chicken of the Sea will be severely prejudiced by Otis' delay if Otis is permitted to

13  recover the injunctive relief sought in its counterclaims, which would force Chicken of the Sea to

14  replace its entire line of canned seafood bearing the "updated" mermaid logo.  *See* Countercl. at

15  16.  In assessing laches, a chief form of prejudice courts consider is expectations-based

16  prejudice.  *See*, *e.g.*, *Danjaq*, 263 F.3d at 955 (determining that the defendant had established

17  prejudice by showing that it had invested approximately "one billion dollars" in the

18  development, production, marketing, [and] distribution" of products bearing its trademarks).

19  Expectations-based prejudice derives from a defendant's taking actions or suffering

20  consequences that it would not have, had the plaintiff brought suit promptly.  *Id.*  For example,

21  Chicken of the Sea suffers prejudice if, in reliance on Otis' delay, it "invest[ed] labor and capital

22  to build a trademark's goodwill and future value."  *Saul Zaentz Co.*, 627 F. Supp. 2d at 1117

23  ("substantial and regular investments into [a trademark's] goodwill demonstrate[d] that

24  [defendant] would…suffer economic prejudice" if enjoined from using its trademark); *see also*

25  *Internet Specialties*, 559 F.3d at 991-92 (noting that prejudice occurs when a party invested in its

26  mark "as the identity of the business in the minds of the public").

27         Here, Chicken of the Sea would unquestionably suffer severe expectations-based

28  prejudice from having invested millions of dollars in its mermaid logo as the identity of the

12

business, both through the nationwide sale of its broad line of seafood products branded with the "updated" mermaid, and through its extensive advertising and promotional efforts.  Ramirez Decl. at ¶¶ 3-5.  For over six decades, Chicken of the Sea has made a massive investment of time, money, and creativity promoting its mermaid logo as the focal point of the Chicken of the Sea brand.  *Id.*  Since introducing the "updated" mermaid logo in 2003, Chicken of the Sea has sold millions of cans, pouches, to-go cups, and frozen seafood products, all featuring the "updated" and trademarked mermaid logo on the label.  *Id.* at ¶ 5.  Chicken of the Sea has thus invested in the "updated" mermaid logo "as the identity of the business in the minds of the [consumer] public."  *See Internet Specialties*, 559 F.3d at 991-92.  If Chicken of the Sea were forced to stop using its "updated" mermaid logo it has used since 2003 on its line of canned seafood, Chicken of the Sea would suffer considerable, significant, and obvious harm in the marketplace.  Ramirez Decl. ¶ 15.  Otis' requested relief would be devastating for Chicken of the Sea, as it would force Chicken of the Sea to replace its entire line of canned seafood products bearing the "updated" mermaid logo, after over 60 years featuring a mermaid, and over 15 years of featuring the "updated" mermaid logo as the focal point of all Chicken of the Sea's seafood products.

Further, Chicken of the Sea expanded upon the fame and notoriety of its famous mermaid logo when it updated the mermaid's "look" in 2003.  *Id.* at ¶ 5.  In the years since the famous mermaid logo was updated, Chicken of the Sea has engaged in significant promotional activities highlighting the "updated" mermaid logo, such as an integrated marketing campaign in 2011, in which the "updated" mermaid logo was brought to life as an animated character, and a nationwide tour and contest to name the Chicken of the Sea mermaid in 2014.  *Id.* at ¶¶ 7-10.

Because Otis permitted Chicken of the Sea to spend the past 15 years selling millions of cans of seafood bearing the "updated" mermaid logo, and investing in marketing revolving around the "updated" mermaid logo, it cannot be disputed that Otis' unreasonable delay in bringing its counterclaims will severely prejudice Chicken of the Sea.  *See Grupo*, 391 F.3d 1088 (finding prejudice when plaintiff delayed four years while defendant "continued to build a valuable business around" its mark); *Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789 (7th Cir.

13

2002) (finding prejudice when plaintiff delayed nine years while defendant spent money promoting its mark); *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187 (2d Cir. 1996) (finding prejudice when plaintiff delayed five years while defendant committed resources to its mark).

There is no genuine issue of material fact as to Otis' unreasonable delay before bringing these counterclaims against Chicken of the Sea, nor is there a genuine dispute that Otis' delay has prejudiced Chicken of the Sea. Accordingly, Otis' counterclaims are barred by laches on their face and summary judgment should be granted to Chicken of the Sea.

### III.   OTIS ACQUIESCED TO CHICKEN OF THE SEA'S USE OF ITS FAMOUS MERMAID LOGO

Whereas laches denotes passive consent, acquiescence amounts to active consent to an allegedly infringing mark. *See*, *e.g.*, 6 McCarthy § 31:41 (collecting citations). Acquiescence "limits a party's right to bring suit following an affirmative act by word or deed by the party that conveys implied consent to another." *Seller Agency*, 621 F.3d at 988-89 (9th Cir. 2010). The Ninth Circuit has adopted a three-part test for establishing acquiescence: (1) the acquiescing party actively represented that it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused undue prejudice to the moving party. *Id.* at 989. All three elements are met here.

There is no real question that Otis' 15-plus-year delay in bringing its counterclaims was inexcusable and unreasonable. *See* sec. A.1-3 above. Nor can there be any genuine dispute that Otis' delay in asserting its counterclaims prejudiced Chicken of the Sea. *See* sec. B. above.

Here, Otis represented by deed that it acquiesced to Chicken of the Sea's use of the "updated" mermaid logo. In particular, Otis admits that it maintained a "business relationship" with Chicken of the Sea from at least 2008 to 2018, a ten-year period during which Otis alleges it purchased upwards of $39 million of seafood from Chicken of the Sea's parent company. Countercl. ¶ 14. Continued business relationships between the parties throughout the period of alleged infringement can give rise to a finding that the plaintiff acquiesced to defendant's use of an allegedly infringing trademark. *See Tillamook*, 311 F. Supp. 2d 1023, 1025 (D. Or. 2004);

14

1    *aff'd*, 465 F.3d 1102 (9th Cir. 2006); *Dwinell-Wright Co. v. White House Milk Co.*, 132 F.2d

2    822, 825-26 (2d Cir. 1943).

3            In *Tillamook*, even though the plaintiff had federally registered its mark and spent

4    millions of dollars promoting it, the district court granted summary judgment because the parties'

5    "prior business dealings…gave rise to [plaintiff's] 'impliedly consenting' to [defendant's] use

6    [of its mark]."  311 F. Supp. 2d at 1037 (citation and internal quotation omitted).

7            Esteemed jurist Learned Hand, in *Dwinell-Wright Co.*, affirmed summary judgment to a

8    trademark defendant where the plaintiff did nothing to stop the defendant's use of the allegedly

9    infringing mark but instead suggested the parties jointly sell the products, and continued to sell

10   its own products, to the defendant.  *Dwinell*, 132 F.2d at 825-26 ("why we should destroy a huge

11   business built up with [plaintiff's] connivance and consent:  this we find it impossible to

12   understand.").

13           Here, Otis' continued business relationship with Chicken of the Sea and admitted

14   purchase of millions of dollars of product from Chicken of the Sea's parent company over a

15   ten-year period with no objection to the use of its "updated" mermaid logo amounted to

16   acquiescence to Chicken of the Sea's use of its "updated" mermaid logo.  *See* Countercl. ¶ 14.

17   As in *Tillamook* and *Dwinell*, Otis engaged in "business dealings" with Chicken of the Sea by

18   continuing to purchase product from Chicken of the Sea throughout the relevant time period.

19   Thus, Otis' claims are barred by its acquiescence to Chicken of the Sea's use of its "updated"

20   mermaid logo, and summary judgment should be granted in Chicken of the Sea's favor for this

21   reason as well.

22                                          **<u>CONCLUSION</u>**

23           Otis never demanded that Chicken of the Sea cease its long-standing use of its "updated"

24   mermaid logo until a year and a half into defending itself against Chicken of the Sea's trademark

25   infringement lawsuit.  Because Otis waited **at least fifteen years** after its causes of action

26   accrued, with respect to the "updated" mermaid, and **at least eleven years** after the analogous

27   statute of limitations period expired, Otis' counterclaims are barred, on their face, by the

28

                                          15

1  doctrines of laches and acquiescence.  Accordingly, this Court should grant summary judgment

2  to Chicken of the Sea on all of Otis' counterclaims.

3

4  Respectfully,

5  Dated: August 29, 2019                    **VENABLE LLP**

6

7  By: Susan Hollander
   Susan E. Hollander

8  *Attorneys for Plaintiff and*
   *Counter-Defendant*

9  *Tri-Union Seafoods, LLC dba*
   *Chicken of the Sea International*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16